AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Galaxy DE2118<br>Seizure No.: 2023250400073601-0011<br>("Target Device 1") | Case No.   '23 MJ01166 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952, 960, 963 | Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Renata M. Arronte incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Renata M. Arronte
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by    telephone    *(specify reliable electronic means)*.

Date:    March 31, 2023

*Judge's signature*

City and state:    San Diego, California            Honorable David D. Leshner, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Renata M. Arronte, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices (collectively referred to as "**Target Devices**"):

> Samsung Galaxy DE2118
> Seizure No.: 2023250400073601-0011
> ("**Target Device 1**")
>
> iPhone 8
> Seizure No.: 2023250400073601-0011
> ("**Target Device 2**")

as further described in Attachment A-1 and Attachment A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation of Guadalupe Jacqueline Gonzalez ("Gonzalez") for importing approximately 22.58 kilograms (49.78 pounds) of methamphetamine, 3.62 kilograms (7.98 pounds) of heroin, 4.02 kilograms (8.85 pounds) of fentanyl, and 1.20 kilograms (2.64 pounds) of cocaine from Mexico into the United States (see: *United States v. Gonzalez*, 23MJ0845-MDD (S.D. Cal 2023)). The **Target Devices** are currently in the custody of Customs and Border Protection located at: 9495 Customhouse Plaza San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

//
//
//
//

# BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since February 2022. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On March 9, 2023, at approximately 3:30 PM, Gonzalez was the driver, sole occupant, and registered owner of a 2014 Chevrolet Cruze waiting to apply for entry into the United States from Mexico at the San Ysidro, California Port of Entry (POE). While in the pre-primary area of the San Ysidro POE, Customs and Border Protection (CBP) Canine Enforcement Officer screened the vehicle with his narcotic and human detection dog and received a positive alert to a trained odor. The CBP Canine Enforcement Officer asked Gonzalez where she was going, and she stated that she was going back to her home in San Ysidro. A CBP Officer conducted an inspection of the trunk of Gonzalez's car and found a plastic wrapped package in a rear quarter panel.

8. Further inspection of the vehicle resulted in the discovery of fifty-seven (57) packages concealed in the rear quarter panels, driver seat, and passenger seat of the vehicle. Forty-seven (47) packages weighing approximately 22.58 kilograms (49.78 pounds) tested positive for methamphetamine, four (4) packages weighing approximately 3.62 kilograms (7.98 pounds) tested positive for heroin, five (5) packages weighing 4.02 kilograms (8.85 pounds) tested positive for fentanyl, and one (1) package weighing 1.20 kilograms (2.64 pounds) tested positive for cocaine.

9. Gonzalez was placed under arrest at approximately 7:10 PM.

10. **Target Devices** were recovered from Gonzalez's purse and seized by a CBP Officer who was tasked to perform a secondary inspection of the vehicle and inventory all the property seized from the Gonzalez and the vehicle.

11. During a post-*Miranda* interview Gonzalez denied knowledge of the narcotics found in her vehicle. Gonzalez stated that she was going to the United States to pick up money and smuggle it to Mexico. During the interview, a Special Agent with HSI showed **Target Devices** to Gonzalez and she claimed ownership over **Target Devices**.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with others to further the importation of federally controlled substances into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on February 7, 2022 up to and including March 9, 2022.

## METHODOLOGY

13.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16. Law enforcement has previously received consent to conduct a forensic download of **Target Devices**. However, no information obtained from the prior search is being offered to support probable cause in this application, nor has any information seen in the review of the **Target Devices** informed the decision to seek this warrant.

//
//
//
//
//
//
//

## CONCLUSION

17. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Gonzalez's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and Attachment A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Renata M. Arronte
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 31st day of March 2023.

_____
Honorable David D. Leshner
United States Magistrate Judge

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Samsung Galaxy DE2118
    Seizure No.: 2023250400073601-0011
    ("**Target Device 1**")

**Target Device 1** is currently in the possession of Customs and Border Protection located at: 9495 Customhouse Plaza San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 and Attachment A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 7, 2023, up to and including March 9, 2023:

a. tending to indicate efforts to import Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of Methamphetamine, Fentanyl, Heroin, Cocaine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.